Martin, J.
In May, 1876, Butler, the owner of a promissory note payable June 17, 1876, made by one Croninger, who was insolvent, and which was indorsed by a responsible indorser, left it for collection with the First National Bank of Gallipolis. It was dated at Gallipolis and no place *522 of payment was named in it. When he left it he told the president of the bank that he, the president, understood it, and that he should take legal steps to collect it; and he testified that he then supposed the bank officers would do what was necessary to be done in making the collection. It was not paid when due and was handed to a reputable notary residing at Gallipolis for demand and protest. Croninger at that time resided with his family on a farm some three or four miles from Gallipolis. Shortly before and for a long time he had resided in Gallipolis. The notary failed to made demand but protested the note and gave notice. Butler reimbursed the bank the amount of the notary’s fee, and sued the indorser who was adjudged released on account of the notary’s negligence. The bank had no agreement for compensation as collecting agent, nor any expectation other than the incidental advantage pertaining to such service.
The original action against the bank was brought by Butler in the common pleas of Gallia county, counting on the notary’s negligence and alleging that he had placed the note in the bank for collection and had directed it to collect or legally protest the same. On a trial in the common pleas, Butler took judgment. A bill of exceptions was allowed; and the district court on error affirmed the judgment. To obtain a reversal of that affirmance the case is here.
The only question that need be noticed is whether the notary, under the facts stated'-, was the agent of the bank or the sub-agent of Butler.
In Reeves v. Bank, 8 Ohio St., 465, the plaintiffs, Reeves, Stevens & Co., left for collection with the Commercial Bank of Toledo — a branch bank of the State Bank of Ohio — their draft, duly indorsed by them, for $500, on Buckingham & Co., of New York, which was forwarded to the American Exchange Bank of New York,-and was paid and credited to the Commercial Bank. The Commercial Bank failed, and its assets, by force of the statute, passed into the custody of the State Bank. When the draft was paid to the *523 American Exchange Bank it had no notice that it was not the property of the Commercial Bank, its apparent owner, which was then apparently solvent. The action was against the State Bank as representative of the Commercial Bank counting on the averment that the Commercial Bank was the sub-agent of the plaintiffs, and that the proceeds of the draft was their money. The essential points ruled were, that the Commercial Bank was responsible to the owners, of the draft for the conduct of the New York bank and for the proceeds of the draft immediately on its collection, and that the New York bank was the agent of the Commercial Bank, and not the sub-agent of Reeves, Stephens & Co.
Admissible deductions from the opinion and the authorities quoted and approved are:
(1) That the Commercial Bank in taking the draft for collection agreed to collect it. That whilst it impliedly agreed to transmit it to a reliable correspondent, this was simply incidental to the principal object in view.
(2) That the acceptance of the draft for collection was prima facie evidence that the service was not regarded as gratuitous; and that it was one of many similar transactions yielding an aggregate profit, and therefore evidence of a valuable consideration.
(3) That the Commercial Bank was under the responsibility of the general engagement when it necessarily engaged the services of its correspondent at New York; and that its correspondent was of its own selection, and was a mere instrument used by it in carrying out its contract.
(4) That a collecting bank is liable not only for a default of its own officers, but also for that of its correspondent in the absence of an agreement, express or implied, with the owner varying such liability.
These rulings and inferences of that well considered case are to be kept in mind in reaching a conclusion in the present case. The question is one of interpretation of the contract. It has proved to be difficult of solution, and has led to an irreconcilable conflict in the authorities.
The opposite view is to the effect that the collecting bank, *524 though liable for the default of its own officers and common agents, yet when a duty in course of collection is necessarily entrusted to a sub-agent, the risk of negligence rests upon the owner of the paper, in the absence of an agreement for compensation (other than the incidental advantage of the service), indicative of an intent to warrant against loss from negligence of such sub-agent.
In our view of the facts of this case the judgment here must be the same, no matter which doctrine as to the general rule of law should be accepted. And we have endeavored to set forth the principles already adjudicated in this state with sufficient clearness to avoid misunderstanding as to the scope and effect of our decision. All the authorities agree that the general liability, whatever it may be, incurred by a bank in taking for collection commercial paper, foreign or domestic, may be varied by agreement, express or implied, of the parties. In this case it is sought to charge a bank at Gallipolis, to which a note was delivered for collection dated at Gallipolis, and not made payable at any particular place, for the negligence of a resident notary, whereby the liability of a responsible indorser was released.
No complaint whatever is made of the bank or its conduct in the business, except as it may be held to be responsible for the acts of the notary as its assumed agent. And thus, as has been stated, the only question is whether the notary was the agent of the bank or the sub-agent of Butler.
In this state the office of notary public is established by statute (Rev. St., sec. 110, et seqi). Careful provision is made for the appointment of the officer. He receives a commission, and is required to give bond and take an official oath. He is also required to have an official seal, and keep a register which is declared a public record, with provision for its perpetual preservation. One of his duties is “ to receive, make and record notarial protests,” and his instruments of protest are declared prima facie evidence of the facts therein certified. All bankers, cashiers, tellers or clerks of banks are disqualified to hold the office; and directors, stock-» holders, attorneys, agents and all other persons holding *525 official relations to any bank are incompetent to act as notary in' instances where such bank is interested. The policy of the act is to secure competent and disinterested service, and to encourage the employment of a notary as an independent officer free from bias. But the statute does not require a protest. It renders it inconvenient to dispense with the services of a notary, and as an inducement to employ him, as well as for convenience, makes his act prima facie evidence of demand and notice. In his petition Butler avers that he directed the bank to collect the note or legally protest it. He had the right to dictate the mode of fixing the indorser’s liability, or of waiving the performance of that duty altogether. Strictly taken, this direction divested the bank of discretion to select a private agent, and made the notary his own agent. The case, however, should not now, if at all, turn on such a construction. It should appear that such was in spirit the direction actually given, or was the natural import in the circumstances stated of the delivery of the note for collection.
Before the passage of the act referred to, a notary frequently sustained a double relation in making a protest, acting both as public officer and as an officer of the bank, or its agent or attorney under its private employment. But under the statute, bankers throughout the state have, generally, if not altogether, discontinued private employment and relied solely on the notary as an independent officer. We think that under our legislation and in the circumstances stated, a bank’s customer in the act of delivering for collection must be held to contemplate the preference given by a protest and to direct the employment in due course of a notary ; and that the bank in taking the paper for collection agrees to collect it if paid, and if not paid to hand it to a reputable notary in season. We think this may be said to be the natural import of the act of delivery by the one and of taking by the other, especially in a jurisdiction where the notary can act only as an independent public officer. Whatever were the duties of the bank they are not involved here. No complaint is made in respect to them.
*526 This case differs widely from the Reeves Case, supra. In that case the customer of course was indifferent as between distant reputable correspondents. The draft was endorsed to the bank and forwarded and treated as its own, and as pointed out by Judge Bbestkerhoit, the consideration for its undertaking was not only the incidental advantage usually arising from the temporary possession of the fund, but also the advantage of having it in Eastern exchange, which to a certain limit- it was required bj1- its charter to have, and which at that time commanded a premium.
In Hoover v. Wise, 91 U. S., 208, the doctrine is very broadly announced that a mere collecting agency is responsible for all agents employed in the course of collection; and that such agency has all the rights and is subject to all the liabilities of an independent contractor; and Reeves v. Bank, supra, is cited and approved on the supposition that it is in point.
In Britton v. Niccolls, 104 U. S., 757, the defendants were bankers at Natchez, Miss., and received for collection (through a bank in Illinois as agent for transmission only) two promissory notes, both dated at Natchez, with no place of payment named in either. They were handed to a reputable notary for demand and protest. He failed to make demand but protested the notes and gave notice. The action was to recover for the notary’s neglect whereby a responsible indorser was released. The Statute of Mississippi relating to notaries was in substance the same as that of this state. Thus that case is on all fours with the one under consideration.
The court held the action not sustainable. Judge Field in delivering the opinion of the court thus states the conclusion arrived at. “It is enough here that the notary was not in this matter the agent of the bankers. He was a public officer whose duties were prescribed by law, and when the notes were placed in his hands in order that such steps should be taken by him as would bind the indorsers if the notes were not paid, he became the agent of the holder of the notes. For any failure on his part to perform his whole *527 duty lie alone was liable ; the bankers were no more liable than they would have been for the unskilfulness of a lawyer of reputed ability and learning to whom they might have handed the notes for collection in the conduct of a suit brought upon them.” The decision does not purport to subvert the general rule adopted in Hoover v. Wise, supra, and must have beeu regarded as in harmony with it and as consistent with legal analogies.
In Gearhart v. Boatsman’s Savings Inst., 88 Mo., 60, the sole question was as to the liability of the defendant for the default of the notary as to giving notice to an indorser of a note which the defendant had received for collection. It appeared that the defendant had appointed the notary and required him to give bond for the due performance of his duties. At that time there had been no authoritative adjudication in Missouri as to the general rule of law on the subject. The action was sustained. The opinion, without announcing a general rule, concludes thus: “ The defendant having appointed the notary by the year and required a bond for the. faithful performance of his duties made him its agent and an officer of the bank. * * * The notary in this instance was not acting in the character of an independent officer in discharge or execution of a duty devolved upon him by law, but as the agent of the defendant.”

Judgment reversed.