16 N.J. Super. 8 (1951)
83 A.2d 777
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ISADORE EISENSTEIN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 24, 1951.
Decided October 17, 1951.
*10 Before Judges JACOBS, EASTWOOD and FREUND.
Mr. John E. Toolan argued the cause for the appellant.
Mr. Edward Gaulkin argued the cause for the respondent (Mr. Richard J. Congleton, Prosecutor, and Mr. Charles V. Webb, Jr., Legal Assistant Prosecutor, attorneys; Mr. C. William Caruso, on the brief).
The opinion of the court was delivered by JACOBS, S.J.A.D.
This is an appeal from the defendant's conviction in the Essex County Court for the crime of false swearing under R.S. 2:157-4.
During the summer of 1950 the Essex County Prosecutor conducted an investigation to determine whether crimes had been committed in connection with the alleged payment by milk dealers of large sums of money for the reinstatement of *11 their licenses to sell milk in Newark. It appeared that over $17,000 had been paid by them to a Newark attorney and that over $16,000 thereof had been turned over to the defendant. In response to the prosecutor's request the defendant voluntarily appeared on July 24, 1950, at the prosecutor's office for questioning. He was attended by his counsel, was advised of the nature of the investigation, and before being questioned responded affirmatively when the following oath was administered to him by notary public Leroy Hammer:
"Do you, Mr. Eisenstein, solemnly swear that the testimony you are about to give in the matter of the issuance of milk permits by the Newark Health Department, June, 1950, shall be the truth, the whole truth, and nothing but the truth, so help you God?"
After several preliminary remarks during which the defendant acknowledged that his appearance was voluntary and that he was willing to answer questions knowing that anything he said might be used against him, he was interrogated and gave detailed testimony. On August 10, 11 and 16, 1950, he gave further sworn testimony at the office of the prosecutor. All of his testimony was recorded and transscribed by the notary public Leroy Hammer, who is also a certified shorthand reporter. Thereafter an indictment was returned by the Essex County grand jury charging in its first and second counts that the defendant did willfully swear falsely on July 24 and August 16, contrary to R.S. 2:157-4. After trial, a verdict of guilty was returned by the jury and the defendant appeals from the ensuing judgment of conviction.
The defendant does not attack the sufficiency of the evidence supporting the finding that testimony given by him on July 24 and August 16 was willfully false. Instead, he rests his appeal upon the contention that he did not swear falsely before any person "authorized by virtue of any provision of law of this State to administer an oath and acting within his authority," as required by R.S. 2:157-4. In support he argues that the notary public did not have the required *12 authority to administer the oath and the prosecutor was not authorized to conduct the examination under oath.
Although notaries public are of ancient origin (Kip v. Peoples Bank and Trust Co., 110 N.J.L. 178, 180 (E. & A. 1932)) their common law power to administer oaths generally has been doubted. Compare Collette v. Hanson, 133 Me. 146, 174 A. 466 (1934) with Wood v. St. Paul City Ry. Co., 42 Minn. 411, 44 N.W. 308 (1890). To remove all question the New Jersey Legislature as early as 1864 provided that, with certain exceptions, oaths, affirmations and affidavits taken for any lawful purpose may be administered by notaries public. See L. 1864, p. 15; Rev. 1877, p. 740. And R.S. 41:2-1 now provides that oaths, affirmations and affidavits "necessary or proper to be made, taken or used in any court of this state, or for any lawful purpose whatever" may, apart from designated exceptions, be administered by various officers, including notaries public.
R.S. 41:2-1 is designedly comprehensive in terms and its exceptions are not material here. Cf. Brandt v. Tartar, 7 N.J. Misc. 229 (Sup. Ct. 1929); Ruckman v. Ransom, 35 N.J.L. 565 (E. & A. 1871). It expressly authorizes notaries public to administer oaths, affirmations and affidavits which are proper to be made for a lawful purpose. The defendant contends, however, that his examination under oath was within the exclusive power of the grand jury and beyond the authority of the prosecutor and that, consequently, it was not for a lawful purpose within the contemplation of R.S. 41:2-1.
The prosecutor is charged with the prosecution of the criminal business (R.S. 2:182-4) in his county and directed to use all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws (R.S. 2:182-5). One of his primary responsibilities is to make appropriate investigation of alleged criminal conduct. In connection therewith and for the purpose of protecting the innocent, as well as ferreting out the guilty, he may properly seek to interrogate persons who have *13 pertinent knowledge. Although he may have no power to subpoena or compel testimony, he may take voluntary statements in narrative or question and answer form and under oath. Cf. R.S. 41:2-3.1. If the statements are under oath and willfully false, the affiants may be prosecuted for false swearing under R.S. 2:157-4.
The defendant concedes the above and acknowledges that if, at the close of his testimony, he had verified it as an affidavit before the notary public, his prosecution for false swearing under R.S. 2:157-4 would have been in order. He nevertheless presses the point that by administering the oath in advance of his testimony the notary public exceeded his authority and the examination was not for a lawful purpose. We fail to find support for this position either in reason or decision. The prosecutor was fairly performing his traditional and delegated function to detect crime without in any wise impinging upon the powers of other public bodies such as the grand jury. He did not seek to subpoena or compel an unwilling witness to testify (cf. Brex v. Smith, 104 N.J. Eq. 386, 391 (Ch. 1929)) but accepted the statement or testimony of a willing witness. The defendant was afforded every protection, including attendance by his counsel and warning that his testimony might be used against him. With his consent and full understanding his testimony was solemnly sworn to; the fact that the oath was administered in advance rather than at its close does not appear to have significance.
In Matter of Michael, 326 U.S. 224, 227, 90 L.Ed. 30, 33 (1945) the court pointed out that perjured testimony in judicial proceedings is "at war with justice, since it may produce a judgment not resting on truth," and similar thought may be expressed with regard to willfully false statements and testimony voluntarily sworn to in the course of an official investigation by the prosecutor. Our Legislature has recognized the need for a ready sanction by creating the statutory offense of false swearing (R.S. 2:157-4) free from technicalities applicable to perjury prosecutions. State v. Kowalczyk, 3 N.J. 51, 58 (1949). Under its enactment it is *14 only necessary to establish that the defendant willfully swore falsely before a person authorized by virtue of a provision of law of this State "to administer an oath and acting within his authority"; in the instant matter we are satisfied that the notary public was authorized by R.S. 41:2-1 to administer the oath and acted within his authority in so doing. Partridge v. Mechanics National Bank, 77 N.J. Eq. 208 (Ch. 1910) affirmed 78 N.J. Eq. 297 (E. & A. 1911), relied upon by the defendant, does not appear to constitute authority to the contrary. There it was simply held that a chattel mortgage's acknowledgment or proof, which the court did not consider to be an affidavit, could not be made before a notary public since the act respecting conveyances provided that chattel mortgages and other instruments might be acknowledged and proved before designated officers but did not include notaries public; this omission was corrected in subsequent legislation. R.S. 46:14-6.
In the light of the foregoing we find it unnecessary to consider the defendant's contention that the taking of his testimony under oath did not fall within the alternative statutory authority of notaries public to administer oaths "necessary or proper to be made, taken or used in any court of the State." In this connection it has been suggested, however, that his testimony under oath would be proper for use in grand jury proceedings which were broadly described in O'Regan v. Schermerhorn, 25 N.J. Misc. 1, 19 (Sup. Ct. 1946) as "proceedings in the court" and, under appropriate circumstances, in judicial proceedings in court as an admission against interest (4 Wigmore, Evidence (3d ed. 1940), §§ 1048, 1050) or to attack credibility (3 Wigmore, supra, §§ 1017, 1018).
The judgment of conviction is affirmed.