**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1612-20

BARBARA MCLAREN,
on behalf of herself and
others similarly situated,

     Plaintiff-Respondent,

v.

THE UPS STORE, INC.,
TURQUOISE TERRAPIN, LLC,
formerly d/b/a UPS STORE #4122,
RK & SP SERVICES, LLC,
formerly d/b/a UPS STORE #4122,
HAMILTON PACK N SHIP, LLC,
in their own right and as
representatives of a class of
similarly situation UPS STORE
franchisees,

     Defendants-Appellants.

_____

Argued May 10, 2021 – Decided July 22, 2021

Before Judges Messano, Hoffman, and Suter.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0919-20.

Joseph R. Palmore (Morrison & Foerster, LLP) of the District of Columbia bar, admitted pro hac vice, argued the cause for appellants (Morrison & Foerster, LLP, attorneys; David J. Fioccola, Adam J. Hunt, and Mark R. McDonald (Morrison & Foerster, LLP) of the California bar, admitted pro hac vice, on the briefs).

Jared M. Placitella argued the cause for respondent (Cohen, Placitella & Roth, PC, attorneys; Jared M. Placitella, Caroline Ramsey Taylor (Whitfield Bryson, LLP) of the Tennessee bar, admitted pro hac vice, and Daniel K. Bryson and Jeremy R. Williams (Whitfield Bryson, LLP) of the North Carolina bar, admitted pro hac vice, of counsel and on the briefs).

PER CURIAM

In this putative class action, we granted defendant, RK & SP Services LLC, leave to appeal from the Law Division's order denying defendant's motion to dismiss the complaint brought by plaintiff Barbara McLaren individually and as representative of a class. Our February 18, 2021 order limited our review to plaintiff's individual claims premised upon defendant's "alleged violation of N.J.S.A. 22A:4-14."[1] That statute provides:

> For a service specified in this section, foreign commissioners of deeds, <u>notaries public</u>, judges and

---

[1] Plaintiff alleged that defendant, a franchisee of defendant The UPS Store, Inc. (TUPPS), was the owner of "UPS Store #4122," and the other individually named defendants were defendant's predecessor and successor in interest. Given the limitation of our order, we use the singular "defendant" throughout this opinion.

other officers authorized by law to perform such service, shall receive a fee as follows:

For administering an oath or taking an affidavit, $2.50.

For taking proof of a deed, $2.50.

For taking all acknowledgments, $2.50.

For administering oaths, taking affidavits, taking proofs of a deed, and taking acknowledgments of the grantors in the transfer of real estate, regardless of the number of such services performed in a single transaction to transfer real estate, $15.00.

For administering oaths, taking affidavits and taking acknowledgments of the mortgagors in the financing of real estate, regardless of the number of such services performed in a single transaction to finance real estate, $25.00.

[N.J.S.A. 22A:4-14 (the Statute) (emphasis added).]

Because this appeal comes to us from the denial of defendant's motion to dismiss the complaint for failure to state a claim, "[w]e . . . treat [plaintiff's] version of the facts as uncontradicted and accord it all legitimate inferences. We pass no judgment on the truth of the facts alleged; we accept them as fact only for the purpose of reviewing the motion to dismiss." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 166 (2005) (citing R. 4:6-2(e)). The critical concern is whether, upon review of the complaint, exhibits attached thereto and matters of public record, there exists "the fundament of a cause of action"; "the ability of

the plaintiff to prove its allegations is not at issue." Id. at 183 (citing Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)).

We review a decision denying a motion to dismiss for failure to state a claim de novo applying the same standard as the Law Division judge. MasTec Renewables Constr. Co. v. SunLight Gen. Mercer Solar, LLC, 462 N.J. Super. 297, 309 (App. Div. 2020) (citing Castello v. Wohler, 446 N.J. Super. 1, 14 (App. Div. 2016)). Moreover, when analyzing pure questions of law raised in a dismissal motion, such as the application of a statute of limitations, we undertake a de novo review. Smith v. Datla, 451 N.J. Super. 82, 88 (App. Div. 2017) (citing Royster v. N.J. State Police, 227 N.J. 482, 493 (2017); Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013)).

I.

On August 26, 2019, plaintiff visited UPS Store #4122 in Hamilton Square, owned at the time by defendant. She sought a notary to take her affidavit on an L-8 Form for the Division of Taxation and to acknowledge her signature on a bank form. Defendant charged plaintiff five dollars per document, for a total of ten dollars. Plaintiff filed this complaint, alleging the following causes of action against defendant: violation of the Statute; violation of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -226; unjust enrichment; and civil

conspiracy. She sought bilateral certification of a class of all customers in New Jersey charged fees in excess of those permitted by the Statute by a defendant class of TUPPS franchisees who charged excessive fees to notarize documents.

Defendant moved to dismiss the complaint before filing an answer, contending it failed to state a cause of action; defendant also sought to strike plaintiff's class allegations. The judge heard legal argument on the motion.

In a written decision, after reciting the relevant case law and the parties' contentions and arguments, the judge concluded "[t]he actual interpretation of the [S]tatute and how parties have perceived [it] cannot be established without further evidence. There are clearly triable issues of fact here, and . . . the matter must be allowed to proceed." The judge denied defendant's motion.[2]

## II.

Defendant repeats the same arguments made in the Law Division. It contends the plain meaning of the Statute is clear — by using the phrase "shall receive," the Legislature signified a "minimum fee" for a notary's service in administering an oath or taking an affidavit, not "a maximum limit" as to what

---

[2] The judge granted the motion as to count five of plaintiff's complaint which separately sought equitable and injunctive relief. The judge concluded this was not a claim but "rather a remedy, a prayer for relief." He "converted" the fifth count to "a request for relief" and dismissed count five. Plaintiff did not seek leave to appeal that portion of the order.

a business may charge for such services. Defendant contends the Statute's plain meaning is confirmed by "statutory context and canons of construction," and "subsequent legislative history and secondary sources" do not "alter [the Statute's] plain meaning." Lastly, defendant contends the Statute does not "infer" any private right of action for alleged violations.

Plaintiff agrees the Statute is not ambiguous — simply put, it "sets the price that can be charged for notary services." Plaintiff contends this construction is supported by canons of statutory interpretation, legislative history, and secondary sources. Plaintiff also argues the Statute implicitly creates a cause of action for its violation, and any violation is also actionable under the CFA.

"The objective of all statutory interpretation is to discern and effectuate the intent of the Legislature[,]" Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012), and "the best indicator of that intent is the statutory language" which should be given its "ordinary meaning and significance." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (first citing Frugis v. Bracigliano, 177 N.J. 250, 280 (2003); and then citing Lane v. Holderman, 23 N.J. 304, 313 (1957)). "We construe the words of a statute 'in context with related provisions so as to give sense to the legislation as a whole.'" Spade v. Select Comfort Corp., 232 N.J.

504, 515 (2018) (quoting N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst, 229 N.J. 541, 570 (2017)).

Courts may not "rewrite a plainly written statute or . . . presume that the Legislature meant something other than what it conveyed in its clearly expressed language."  Murray, 210 N.J. at 592 (citing DiProspero, 183 N.J. at 492).  "If the plain language leads to a clear and unambiguous result, then our interpretive process is over."  Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016) (quoting Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195 (2007)).  "We rely on extrinsic evidence of legislative intent 'only when the statute is ambiguous, the plain language leads to a result inconsistent with any legitimate public policy objective, or it is at odds with a general statutory scheme.'"  Spade, 232 N.J. at 515 (quoting Shelton v. Restaurant.com, Inc., 214 N.J. 419, 429 (2013)).

Defendant contends the Statute "creates an entitlement for notaries to be compensated, not a restriction on what they or their employers may charge." Plaintiff counters that the plain language of the Statute — a notary "shall receive a fee" — evidences the Legislature's intent to limit the fee for performance of the outlined services.  With both sides arguing diametrically opposed views of the Statute's plain meaning, we might assume some ambiguity regarding the

7

Legislature's choice of words. See, e.g., MasTec Renewables, 462 N.J. Super. at 320 (noting ambiguity in a statute if its wording "leads to more than one plausible interpretation" (quoting State v. Twiggs, 233 N.J. 513, 532 (2018))). However, we are inclined to agree with plaintiff.

Shall means "[h]as a duty to; more broadly, is required to." Black's Law Dictionary 1653 (11th ed. 2019). "When according statutes their plain meaning, 'the word "may" ordinarily is permissive and the word "shall" generally is mandatory.'" In re State Bd. of Educ.'s Denial of Petition, 422 N.J. Super. 521, 532 (App. Div. 2011) (quoting Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 325 (2000)). "In

. . . rare situations, the word 'shall' conveys only a suggestion that something be done, rather than a mandate to do it." Ibid. But, only "[i]f no public benefit ensues and no private right is insured by according the word 'shall' an imperative meaning, . . . is [it] to be construed as directory rather than mandatory." State v. Jorn, 340 N.J. Super. 192, 196 (App. Div. 2001) (quoting Franklin Ests. v. Twp. of Edison, 142 N.J. Super. 179, 184 (App. Div. 1976), aff'd, 73 N.J. 462 (1977)).

Pursuant to the Notaries Public Act (the NPA), N.J.S.A. 52:7-10 to -21, notaries are appointed by the State Treasurer for a five-year term "but may be

removed from office at the pleasure of the State Treasurer." N.J.S.A. 52:7-11(a). A notary must "subscribe an oath" and "indorse a certificate of commission and qualification." N.J.S.A. 52:7-14(a) and (b). Notaries may be denied appointment or re-appointment if convicted of certain crimes. N.J.S.A. 52:7-20; N.J.S.A. 52:7-21.

The Legislature generally has provided notaries public with the authority to administer oaths and take affidavits since 1864. State v. Eisenstein, 16 N.J. Super. 8, 12 (App. Div. 1951) (citing L. 1864, p. 15; Rev. 1877, p. 740). N.J.S.A. 41:2-1 lists those "officers" empowered to administer oaths and take affidavits; notaries public are included, along with justices of the Supreme Court, judges, mayors, surrogates, sheriffs and clerks of court. Notaries public and attorneys are in a short list of otherwise public officials "authorized to take acknowledgments or proofs." N.J.S.A. 46:14-6.1(a).[3]

Our point is simple. As Chief Justice Weintraub said, "The notary holds a public office . . . [and] exercises a power he [or she] receives from government rather than from someone who happens to be his private employer." Com. Union Ins. Co. v. Burt Thomas-Aitken Constr. Co. (Com. Union I), 49 N.J. 389, 392–

---

[3] See Tunia v. St. Francis Hosp., 363 N.J. Super. 301, 306 (App. Div. 2003) (explaining "acknowledgments" as "statements completed by the notaries public . . . necessary to record an instrument, N.J.S.A. 46:14-2.1," and not a "jurat").

93 (1967) (citations omitted).  See also Immerman v. Ostertag, 83 N.J. Super. 364, 369 (Law Div. 1964) ("A notary is a public officer and, as such, he owes a duty to the public to discharge his functions with diligence.").

Plaintiff sought the services of a public officer to whom the government has granted significant powers limited to few others in the state, and over whom the government exercises significant authority.  A member of the public would hardly expect that other public officials empowered by the Statute to perform certain functions could charge whatever they wished for administering oaths, taking acknowledgements, et cetera.  Yet, during oral argument before us, defendant acknowledged that its interpretation of the Statute's plain language would permit a notary to charge $100 or more for these services, an absurd result that cannot be countenanced based on a literal reading of the statutory language. Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012).  In our view, the Statute provides a decidedly public benefit by limiting the amount of money the public may be charged by a public officer, and that benefit is only secured by "according the word 'shall'" — a notary public shall receive a fee — its "imperative meaning."  Jorn, 340 N.J. Super. at 196 (quoting Franklin Ests., 142 N.J. Super. at 184).

Defendant posits other arguments that do not rely on the Statute's plain language. While noting the paucity of caselaw, defendant cites <u>Gittleman v. City of Newark</u>, 132 N.J.L. 328 (E. & A. 1945), <u>Castellano v. City of Newark</u>, 21 N.J. Misc. 63 (Cir. Ct. 1943), and <u>Samson v. City of Newark</u>, 125 N.J.L. 221 (Sup. Ct. 1940), as supporting its position that the Statute merely states minimum compensation to which notaries are entitled, not a limitation on fees they may charge. None of the cases cited by defendant are apposite.

In <u>Gittleman</u>, the plaintiff, an attorney working for the City of Newark, sued seeking payment for taking acknowledgements on tax sale certificates three years earlier. 132 N.J.L. at 329. The court simply held that the plaintiff "waive[d] . . . any claim for the taking of acknowledgments." <u>Id.</u> at 330 (citations omitted). Similarly, in <u>Castellano</u>, the plaintiff attorney employed by the City of Newark sued "for alleged statutory compensation claimed to be due . . . for taking acknowledgments to tax sales certificates." 21 N.J. Misc. at 63. The court recognized the Statute "provide[d] . . . compensation . . . for taking acknowledgements," but rejected the plaintiff's suit, noting his position and annual salary "contemplated . . . the performance . . . of such services," and further, that at the time the plaintiff actually performed the services, the Statute

11

A-1612-20

made "no provision for compensation . . . for taking acknowledgments by an attorney-at-law." Id. at 65–66.

The court in Samson reached a different result, concluding that the plaintiff-attorneys, who were not employed by the City of Newark, took acknowledgments on tax sale certificates but never received "[t]he fee fixed by law." 125 N.J.L. at 222. Instead, those fees became part of the tax lien and when sold those fees were paid into the city treasury. Ibid. The court concluded the plaintiffs were entitled to judgment because the city was "enriched at the expense of officers performing a statutory service for which a fee has been earned and paid to the city." Id. at 223.

In our view, these cases stand for nothing more than the unremarkable proposition that the Statute provides compensation for a notary and other public officials who perform certain services. They do not advance defendant's claim that the Statute does not cap the fee charged to the public.

In fact, the dicta in these cases, and one more which neither party cites, support plaintiff's position, not defendant's. In Commercial Union Insurance Company v. Burt Thomas-Aitken Construction Company (Com. Union II), the Court considered the plaintiff-surety's claim that the "notary should be held to guarantee the truth of his acknowledgement." 54 N.J. 76, 81 (1969).

Recognizing the notary was "not an insurer, and is not liable except for negligence[,]" the Court affirmed the jury's no cause verdict. Ibid. Importantly for our purposes, the Court said: "The authorized fee for an acknowledgment . . . is nominal and would hardly support an investigation appropriate for the assumption of absolute liability." Ibid. (emphasis added) (citing N.J.S.A. 22A:4-14).[4] See also Castellano, 21 N.J. Misc. at 65 (the Statute "merely fixes the amount" for certain services); Samson, 125 N.J.L. at 223 (noting the plaintiffs were "entitled by law to fixed fees") (emphases added). In short, these cases support plaintiff's principal argument that the fee charged for services listed in the Statute has been fixed by the Legislature.

Defendant contends the Statute should not be read as setting a mandatory maximum fee for the services listed because the phrase — "shall receive a fee as follows" — is markedly different from other statutory provisions that evince the Legislature's clear intention to fix a permitted fee. We accept as a general proposition that the Legislature knows how to express its intent, and the presence of explicit language of other statutory provisions may imply a legislative intent different from the expressed language in the Statute at issue. See, e.g., Fraternal Ord. of Police, Newark Lodge No. 12 v. City of Newark, 244

---

[4] At the time, the statutory fee for an acknowledgment was one dollar. Ibid.

N.J. 75, 111–12 (2020) (concluding that "power of inquiry" provided by one statute is not the power to subpoena explicitly provided in other statutes).

The statutes defendant cites are not part of Chapter 4 of Title 22A which generally deals only with fees charged by various public officers for their services. We confine our review to those provisions, many of which were enacted as part of a comprehensive legislative scheme.[5] See DiProspero, 183 N.J. at 492 (reading statutory words "in context with related provisions so as to give sense to the legislation as a whole"). The language in many sections varies little from that used in the Statute. See N.J.S.A. 22A:4-6 ("county clerk shall receive" certain amount for "attending . . . daily sessions" of Superior Court); N.J.S.A. 22A:4-8 (enumerating fees that sheriffs "shall receive" for various services); N.J.S.A. 22A:4-10 (listing fees that "[s]heriffs, undersheriffs, deputy sheriffs, constables, court attendants and other officers authorized by law to perform" certain services "shall receive"); N.J.S.A. 22A:4-11 (computing mileage payments that "[s]heriffs, constables and other authorized officers shall receive"); N.J.S.A. 22A:4-12 (setting fees that clerk of the Superior Court, county clerks and registrars "shall receive" for various services); N.J.S.A.

---

[5] Although its historical antecedents extend back to the nineteenth century, the Statute was part of a comprehensive revision enacted by the Legislature in 1953. See L. 1953, c. 22.

22A:4-16 (services performed by judicial officers "shall be paid to, demanded and received by the clerk of the court"). According to N.J.S.A. 22A:4-17(a), "[a]ll fees . . . and other perquisites of whatever kind" that certain county officials "are entitled <u>to charge and receive</u> for any official acts or services they may render shall be for the sole use of the county." (emphasis added).

As already noted, the Statute includes notaries amongst other public officers and is part of a larger scheme devised by the Legislature. It is incomprehensible that the Legislature intended public officers, including notaries public, could simply charge "and receive a fee" for certain services exceeding those fees set forth within the statutory framework.

Defendant's interpretation of the Statute's language is also not supported by its more recent legislative history. <u>See</u> <u>Varsolona v. Breen Cap. Servs. Corp.</u>, 180 N.J. 605, 623 (2004) ("[S]ubsequent legislation may be used by a court as an extrinsic aid when seeking to discern earlier legislative intent."). The Legislature enacted amendments to the Statute in 2002 that increased the fees for certain services, including taking an affidavit or acknowledgment. <u>L.</u> 2002, <u>c.</u> 34 § 48, eff. July 1, 2002. In addition, the 2002 amendment added the following new provisions to the Statute:

> For administering oaths, taking affidavits, taking
> proofs of a deed, and taking acknowledgments of the

grantors in the transfer of real estate, <u>regardless of the number of such services performed in a single transaction to transfer real estate</u>, $15.00.

> For administering oaths, taking affidavits and taking acknowledgments of the mortgagors in the financing of real estate, <u>regardless of the number of such services performed in a single transaction to finance real estate</u>, $25.00.

[N.J.S.A. 22A:4-14 (emphasis added).]

Defendant contends that these additional provisions evince a legislative intent to cap notary fees only in certain circumstances — real estate and mortgage transactions — not present here. We reach a different conclusion. The Legislature understood that federal law required closing statements provide accurate figures for certain ministerial duties, like notary services, that were necessary to consummate the sale or mortgage financing:

> Under federal law (Real Estate Settlement Procedures Act), notary charges must be shown on the closing statement of a real estate transaction. However, the precise amount of the charges is typically not known until shortly before the settlement. To amend the closing statement so close to the settlement can cause delay in the process of completing the transaction. This bill takes the guesswork out of calculating the notary public charges so that closing statements can be prepared in advance of the settlement and the transaction can be completed without additional delay.

16

[<u>Sponsor's Statement to A. 1848</u> (Feb. 21, 2002).][6]

These new provisions limited the fees notaries public "shall receive" when providing certain services in real estate and mortgage transactions, regardless of the number documents involved. The new provisions did not change the fees notaries "shall receive" in other circumstances, and they do not indicate a different legislative intent as to the maximum fees notaries could charge for their services.

We conclude that the fees for notarial services set by the Statute are the maximum fees that may be charged. Such interpretation is consistent with the plain language of the Statute, the context of the entire legislative scheme of which it is part, the limited caselaw applying the Statute, and its recent legislative history.

III.

Defendant contends that the Statute confers no private right of action upon plaintiff to bring a suit alleging she was charged notary fees in excess of the statutory amounts. Defendant also asserts, in passing, that since it is a business

---

[6] It appears that the provisions of A.B. 1848 were incorporated in the final text of A. 2506 and enacted as <u>L.</u> 2002, <u>c.</u> 34.

entity, not a corporeal person serving as a notary, even if plaintiff was correct in her construction of the Statute, she had no cause of action against defendant.

As to this latter point, the motion judge aptly noted that issues of defendant's vicarious responsibility for the actions of the notary who provided the services to plaintiff, as well as TUPPS' potential liability for the conduct of its franchisees, were incapable of resolution without further development of the record.[7] We decide only whether the facts alleged in plaintiff's complaint "suggested" a cause of action against defendant. Printing Mart-Morristown, 116 N.J. at 746. The complaint certainly meets this test.

As to the right to bring a cause of action specifically under the Statute, "New Jersey courts have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action." R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 168 N.J. 255, 271 (2001). The Court has adopted a three-part test for determining whether a statute implies a private right of action:

---

[7] We also hasten to add that we do not decide whether a franchisee may charge a notary fee consistent with the Statute and a separate "convenience" fee. The appendix to defendant's motion for leave to appeal included a similar complaint filed by another plaintiff in another vicinage, to which was attached the store receipt demonstrating an alleged violation of the Statute. That receipt, however, had the charge broken down into two components: a notary fee of $2.50; and a convenience fee of $12.50.

> To determine if a statute confers an implied private right of action, courts consider whether: (1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy.
>
> [Id. at 272.]

"Although courts give varying weight to each one of those factors, 'the primary goal has almost invariably been a search for the underlying legislative intent.'" Id. at 272–73 (quoting Jalowiecki v. Leuc, 182 N.J. Super. 22, 30 (App. Div. 1981)).

Here, the first Gaydos prong weighs in favor of an implied cause of action because the fees set by the Statute were intended to benefit the public by limiting the amount of money that public officers could charge for performing certain functions. It is anomalous, indeed, if our courts were to recognize the potential right of a notary to sue for his or her statutory fees, as in Gittleman, Castellano, and Samson without recognizing the public's reciprocal right to only pay those fees permitted by the Statute.

As to the second Gaydos prong, there is no evidence that the Legislature intended to create a private right of action under the Statute as it expressly did

19

in other provisions of Chapter 4 of Title 22A. N.J.S.A. 22A:4-8, for example, provides that an "aggrieved" party may file suit against a sheriff whose charges exceed the statutory amount. As part of the 1953 legislation which included the Statute, the Legislature enacted N.J.S.A. 22A:4-13, a provision that expressly permitted a party to sue a notary who overcharged for services involving certain commercial instruments. L. 1953, c. 22, § 11; repealed by L. 2002, c. 34, § 49.[8] N.J.S.A. 22A:4-15 expressly permits the State Treasurer to file a "civil action" to recover fees charged by the Clerks of the Supreme Court and Superior Court and bring suit in lieu of prerogative writs against those public officers. See also N.J.S.A. 22A:4-17 (permitting county commissioners to file similar suits against county surrogates, clerks, registrars, and sheriffs for failing to remit fees received for their official acts).

---

[8] The Sponsor's Statement for the repealer explained its purpose, which had nothing to do with the private right of action set forth in the statute:

> [T]he bill repeals N.J.S.A. 22A:4-13, which establishes the fees a notary public may collect for the service of making a demand for payment or registering a protest against a demand for payment. The act of making a demand for payment under oath was made obsolete with the passage of the Uniform Commercial Code . . . in 1961.
>
> [Sponsor's Statement to A. 1848.]

It is significant that the Legislature expressly provided for private and public rights of action for violations involving statutory fees public officers may charge for their services, or for other failures in carrying out their ministerial duties, yet did not provide for similar rights under the Statute. "In determining whether the Legislature intended to authorize an implied private cause of action, 'a court should be mindful of the "elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."'" Castro v. NYT Television, 370 N.J. Super. 282, 293 (App. Div. 2004) (quoting Glynn v. Park Tower Apartments, Inc., 213 N.J. Super. 357, 362 (App. Div. 1986)).

As to the third Gaydos prong, "[o]ur Supreme Court has indicated that a court should be especially hesitant in implying a right to a private cause of action against an entity that is subject to pervasive regulation by a State agency." Id. at 293. As noted, pursuant to the NPA, notaries public are commissioned public officers who are subject to statutory obligations and may be removed at the at the pleasure of the State Treasurer. N.J.S.A. 52:7-11. The New Jersey Division of Revenue's Business Support Services Bureau administers the notary public

program and has published a manual for guidance a required by the NPA.[9] See N.J.S.A. 52:7-17 (requiring the State Treasurer to include certain provisions in the manual and update the manual as appropriate).

Presumably, the conduct of any notary public who charges fees exceeding those permitted by the Statute could be brought to the attention of the State Treasurer for appropriate action. See Warren Cnty. Bar Ass'n v. Bd. of Chosen Freeholders, 386 N.J. Super. 194, 203 (App. Div. 2006) (declining to find private right of action under N.J.S.A. 2B:6-1 because "recognition of a private right of action is not required to ensure proper enforcement of the statute" (citing R. J. Gaydos, 168 N.J. at 274–75)).

We conclude that the Statute confers no private cause of action on plaintiff. We therefore reverse the order under review and order the trial court to dismiss the first count of her complaint.

Our order limited the grant of interlocutory appeal to "causes of action asserted by plaintiff in her individual capacity against defendant . . . premised upon that defendant's violations of [the Statute]." Defendant correctly notes in its brief the limited scope of our order, and we regret any imprecision in the

---

[9] Parenthetically, the manual states the fees in the Statute "are fees that Notaries may charge."

order that may have implied our intention to address whether the complaint was cognizable under the CFA. Additionally, plaintiff properly notes that her complaint alleged other common law causes of action which also were not within the scope of our order.

More importantly, since entry of our order, it has become clear that the paucity of the existing record impedes any consideration of whether charging a fee that violates the Statute is alone sufficient to sustain the CFA count in the complaint. For example, we already noted the complex statutory scheme governing notaries public under the NPA and the power of the State Treasurer to remove a notary from his office at the Treasurer's pleasure.[10]

Plaintiff's assumption that a violation of the Statute is per se a violation of the CFA fails to recognize the difference between services provided by a public officer — an individual notary public — and a purveyor of consumer goods and services. We are unfamiliar with any case that holds the CFA applies to a public official who obtains his or her powers directly from the State and is subject to significant State control and discipline, and plaintiff has failed to bring one to our attention.

---

[10] Several pieces of legislation are currently pending in the Legislature that would significantly amend the current NPA.

At the same time, defendant and the other franchisees are providing a service to the public. On the record that exists, we reach no conclusion as to whether the complaint states a cause of action under the CFA or the common law, nor was it our intention to address those issues by our grant of interlocutory review.

We reverse the order under review only with respect to count one of plaintiff's complaint. Although we conclude the Statute sets the maximum fee a notary public may charge for services listed in the Statute, the Statute provides no express or implied cause of action to recover for an excessive fee. The matter is remanded to the Law Division for entry of an order dismissing count one of plaintiff's complaint and for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1612-20