RUTH SIMON, PLAINTIFF-APPELLANT, v. PEOPLES BANK AND TRUST COMPANY OF PASSAIC, NEW JERSEY, A CORPORATION, ETC., ET AL., DEFENDANTS-APPELLEES.

Argued May 8, 1935—Decided September 21, 1935.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the appellant, *Koch & Simon* (*Paul Rittenberg,* of counsel).

For the appellees Peoples Bank and Trust Company of Passaic and J. Vincent McQuire, *William N. Gurlman.*

For the appellee The Hamilton Trust Company of Paterson, New Jersey, *Albert Comstock* (*William B. Gourley,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. This is a tort action. Appellant, plaintiff below, is the owner and holder of a $200 promissory note of

one, Kohut Simon, dated January 16th, 1933, and made payable two months after its date at the Peoples Bank and Trust Company of Passaic, New Jersey; it is endorsed by one I. (Israel) Frucht, but his address does not appear thereon. Prior to the due date of the note, plaintiff delivered it to the Hamilton Trust Company of Paterson, New Jersey, for collection. The latter bank, after endorsing it and guaranteeing the endorsements, transmitted it to the Federal Reserve Bank of New York for presentation and collection. The last named bank followed the same procedure as to endorsements and, in turn, transmitted it to the Peoples Bank and Trust Company of Passaic, New Jersey, for presentation and collection.

On March 16th, 1933, J. Vincent McQuire, teller and notary of the Peoples Bank and Trust Company, presented the note for payment and when it was not paid protested it. He mailed notices of protest to the Federal Reserve Bank of New York, Hamilton Trust Company, and to the maker, payee and endorser in care of the Hamilton Trust Company. The latter received these notices on March 17th, 1933, and on the day following mailed them to the plaintiff. The plaintiff denied that she ever received notice of the fact that the note was not paid; she testified that she did not learn of its non-payment until about a week after it was due and then only through the intervention of her husband whom she sent to the bank to make inquiry concerning it.

It is undisputed that Frucht, the endorser, did not receive any notice of protest. Notwithstanding the refusal of the trial judge to admit in evidence the docket of the suit in the District Court of the city of Paterson, by the plaintiff against the endorser, "it is admitted that suit was instituted against him [Frucht] and judgment was rendered in his favor by reason of his failure to receive notice of its [note] protest and dishonor." The execution issued on the judgment recovered against the maker of the note was returned unsatisfied.

Let it be marked that the gravamen of the complaint is that each defendant was under duty to the plaintiff of furnishing notice of protest and dishonor pursuant to law; that the breach of that duty by the defendants, or any of them,

destroyed plaintiff's rights against the endorser; that the judgment against the maker proved fruitless; and, therefore, plaintiff was damaged in dollars and cents to the face amount of the note, plus interest, and protest fees.

Defendants contend here, as they did below, that they had fully discharged whatever duty the law imposed on them in the premises. The trial judge sustained that contention and, without comment, rendered judgment in their favor.

We, of course, approach the consideration and determination of this case upon the theory adopted and pursued by the respective parties hereto. *Lastowski* v. *Lawnicki,* 115 *N. J. L.* 230 (at *p.* 234).

The Hamilton Trust Company concedes that it was plaintiff's agent. It strongly contends, however, that it was under no obligation to send the notice of dishonor and protest to the endorser. This contention is predicated on the fact that it had given the necessary notice to its principal, the plaintiff, in pursuance of section 94 of our Uniform Negotiable Instruments law. 3 *Comp. Stat.* 1709-1910, *pp.* 3734, 3746. We think that this contention is untenable. The notice of protest and dishonor given by the Hamilton Trust Company, the receipt of which as stated, was denied by plaintiff, was not given within the time (section 104, Uniform Negotiable Instrument law) or in the manner provided in section 210 of the Negotiable Instrument act. The Hamilton Trust Company clearly breached its duty toward the plaintiff.

Before we can determine the liability, if any, of the remaining defendants towards the plaintiff, it becomes necessary, of course, to first determine the relationship that existed between them. Were all parties called in the case subsequent to the Hamilton Trust Company, agents of the latter, or were they plaintiff's agents?

In the annotation (general discussion of the nature of relationship of employer and independent contractor) 19 *A. L. R.* 226, there appears (at *p.* 263), the following:

"Many courts hold that the obligation of a bank with which commercial paper is deposited for the purpose of being collected in a city other than the one in which the bank is doing business is limited to the exercise of reasonable care in choos-

ing a suitable party to make the collection, and that it is consequently not responsible for the defaults of that party in discharging the functions so devolved. This doctrine is considered to be an appropriate deduction from the consideration that the depositor is presumed to know that, under the circumstances, it will be necessary for the bank to entrust the collection to a correspondent, unless it has an office of its own in the city to which the paper is to be transmitted."

"In the view of other courts, the receiving bank is to be regarded, in the absence of an express stipulation to the contrary, as having undertaken to do everything that may be necessary to make the collection, and, consequently, as having assumed a full liability for any negligence of which its correspondent may be guilty. It is observable that the conflict of opinion upon this subject reflects simply a difference of theory respecting the implied terms of the contract between the depositor, and the receiving bank. It has never been even suggested, much less seriously contended, that a liability on the part of the receiving bank might be predicated on the ground of its being entitled to control its correspondent with regard to the details of the collection."

"So far as regards the status of the receiving bank itself, there is explicit authority for the doctrine that it is not subject to such control. The Supreme Court of the United States has declared that the effect of the second group of cases, referred to above, is that, 'where a bank, as a collecting agency, receives a note for the purposes of collection, its position is that of an independent contractor, and that the instruments employed by such bank in the business contemplated are its agents, and not the sub-agents of the owner of the note.' *Hoover* v. *Wise,* 91 *U. S.* 308; 23 *L. Ed.* 393. For the purposes of the present discussion, this form of phraseology is particularly significant, for the reason that it indicates how. in this instance as in many others, there is, so far as respects the element of freedom from control, an overlapping between the domains connoted by the terms 'agent' and 'independent contractor.' "

Our Court of Errors and Appeals in a well considered opinion, in *Titus & Scudder* v. *Mechanics' National Bank,*

35 *N. J. L.* 588, pointed out the conflict of authorities on the question and held (at *p.* 594) :

"* * * In England, in New York, and several other states, it is held that a bank receiving a note for collection, is responsible for the fault or neglect of its corresponding bank, or any other agent to whom it may transmit it for collection. This doctrine is expressly laid down by the Court of King's Bench, in *Van Wart* v. *Woolley,* 3 *Barn. & C.* 439 ; and by the House of Lords, in *Mackersy* v. *Ramsays,* 9 *Cl. & F.* 818, and is indirectly acknowledged in *Prideaux* v. *Criddle,* 4 *Q. B.* (*L. R.*) 455."

And on *pp.* 595, 596, further held :

"* * * One cardinal and well-established principle is, that every one shall be liable for the acts of his agents chosen by himself. This, when applied to such a case, is founded in equity and good sense. A dealer who deposits a draft on a distant city, in a bank in his own town, has no choice of their agent or correspondent. It is the business of a bank to provide proper agents or correspondents for this service, when they adopt it, as most banks do, as part of their regular business. If they have no such correspondent, they should refuse to take the paper for collection, and then the holder could choose whether he would leave it for transmission. He would then be led to inquire about the agent to whom it would be transmitted. The English and New York rule is much better adapted to the convenient dispatch of business. It is no hardship on the bank; it can always look to its correspondent bank to which transmission is made, for indemnification from its neglect."

It is the well settled law that collection banks are liable for the negligence of their notaries. *Davey* v. *Jones,* 42 *N. J. L.* 28 ; *Titus & Scudder v. Mechanics' National Bank, supra.* See, also, cases collated in 19 *A. L. R.* (at *p.* 266). And the notary is under the clear duty of exercising due diligence in ascertaining the address of those to whom notice of protest and dishonor are required to be sent. *Second National Bank* v. *Smith,* 91 *N. J. L.* 531. In the case of *Passaic National Bank and Trust Co.* v. *Criswold,* 8 *N. J. Mis. R.* 262 ; 10 *Id.* 190 ; *affirmed,* 110 *N. J. L.* 16, which was reversed twice.

this court on the first reversal held: (8 *N. J. Mis. R.* (at *p.* 263):

"Nor does it appear that the notary exercised any diligence whatever in attempting to learn the endorser's address. He made no inquiry of the maker, the officials of the bank, or anyone else whether connected with the transaction or not, so that notice of dishonor could not be dispensed with under section 112 of the Negotiable Instruments act."

And on the second reversal this court made this pertinent observation (10 *N. J. Mis. R.* (at *p.* 192):

"No city directory or telephone directory was inspected which would have disclosed the address. Criswold testified Knapp had a telephone."

Now what were the proofs as to the notary? It is uncontradicted that the name and address of Frucht (endorser) appeared in the city directory and in the city telephone directory; · that the notary did not inspect either one of these directories, nor did he make any other sort of inquiry concerning Frucht's address. All he did was to send the notices in care of the Hamilton Trust Company. Under this posture of the proofs it is clear that the notary had not exercised due diligence; that he was negligent and that his negligence bound the bank for which he was acting.

It was, therefore, reversible error for the trial judge to find for the defendants. Since, in all probability, the case will be retried, attention is directed to chapter 270, *Pamph. L.* 1929, *p.* 644 (bank collection code) which in many respects changes the rights and liabilities of the respective ·parties herein and to which no reference was apparently made, at any time, by either party.

Judgment·is reversed, costs to abide event.