COMMERCIAL UNION INSURANCE COMPANY OF NEW YORK, PLAINTIFF-RESPONDENT, v. BURT THOMAS-AITKEN CONSTRUCTION COMPANY, *ET AL.*, DEFENDANTS, AND PROSPECT PARK NATIONAL BANK, DEFENDANT-APPELLANT.

Argued February 13, 1967—Decided June 5, 1967.

*Mr. Reginald F. Hopkinson* argued the cause for defendant-appellant (*Messrs. Jeffer, Walter and Tierney,* attorneys).

*Mr. Theodore W. Geiser* argued the cause for plaintiff-respondent (*Mrs. Sonia Napolitano,* on the brief; *Messrs. Pindar, McElroy, Connell and Foley,* attorneys).

The opinion of the court was delivered by

WEINTRAUB, C. J. Plaintiff, a surety company, sues on an indemnity agreement to recoup a loss on a performance bond. One of the indemnitors having asserted that his signature on the indemnity agreement was forged, plaintiff joined the notary public who took the acknowledgment on that agreement and joined also the bank by whom the notary was employed. The bank denied the notary acted as its employee and on that basis it prevailed upon a motion for summary judgment. 87 *N. J. Super.* 287 (*Law Div.* 1965). The Appellate Division reversed, 91 *N. J. Super.* 13 (*App. Div.* 1966). We granted the bank's petition for certification, 47 *N. J.* 566 (1966). The sole issue before us is whether there is a basis to pursue the bank.

On deposition the notary testified he was an assistant cashier and also a stockholder of the bank; that he became a notary public about eight years ago on his own accord and not at the bank's request but that the bank paid the fees incidental to his reappointment; that he notarized some 30

papers a year at the request of customers of the bank for their accommodation and without charge. The Appellate Division held that upon a finding, which the evidence would permit, that the assistant cashier was actuated in part by a purpose to improve customer relations, the bank could be charged as employer with his neglect in his role of notary public. In reaching that conclusion, the Appellate Division applied conventional agency provisions summarized in 1 *Restatement, Agency 2d,* § 228, *p.* 504.[1]

This situation differs, however, from the conventional one in two respects. The first is that a notary public is a public officer and as such exercises an authority the bank itself could not receive and does an act the bank itself could not do. The second is that plaintiff did not know of and hence did not rely upon a connection between the notary and the bank, plaintiff having sought only an acknowledgment by *some* notary.

 That the bank itself could not exercise the functions of a notary public is clear. Notaries public, at one time appointed by the Governor and now by the Secretary of State, are commissioned by the Governor. *N. J. S. A.* 52:7-1, 1.1. The notary holds a public office, 39 *Am. Jur., Notary Public,* § 6, *p.* 214; annotation, 79 *A. L. R.* 449 (1932), which the bank itself could not hold, *Kip v. Peoples Bank and Trust Co.,* 110 *N. J. L.* 178, 183 (*E. & A.* 1933). In *Kip* (*p.* 181) the court accepted the general description

---

[1] "(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform.

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master."

of a notary formulated in 46 *C. J., Notaries,* § 1, *p.* 501, and restated in 66 *C. J. S. Notaries* § 1, *p.* 609:

"A notary or notary public is a public officer whose function it is to attest and certify, by his hand and official seal, certain classes of documents, in order to give them credit and authenticity in foreign jurisdictions, to take acknowledgments of deeds and other conveyances, and certify them; and to perform certain official acts, chiefly in commercial matters, such as the protesting of notes and bills, the noting of foreign drafts, and marine protests in cases of loss or damage."

Thus the notary public exercises a power he receives from government rather than from someone who happens to be his private employer. The bank could not itself take an official acknowledgment or empower an employee to do so.

We know of no comparable case in which the private employer of one who is also a notary public has been charged vicariously with the notary's neglect in public office. The common situation in which a bank is sought to be held for a notary's neglect involves a failure to present or to protest paper the bank receives for collection. The cases divide upon the bank's liability, but those States which, like New Jersey, hold the bank, do so upon the thesis that the notary's failure is with respect to a duty required of the bank so that the notary failed, not as a public officer, but as an employee or agent selected by the bank to perform the bank's own obligation. 9 *C. J. S. Banks and Banking* § 235(c), *p.* 493; *Titus & Scudder v. Mechanics' National Bank,* 35 *N. J. L.* 588 (*E. & A.* 1871); *Davey v. Jones,* 42 *N. J. L.* 28 (*Sup. Ct.* 1880); *Simon v. Peoples Bank & Trust Co.,* 115 *N. J. L.* 521, 525 (*Sup. Ct.* 1935), reversed on other grounds, 116 *N. J. L.* 390 (*E. & A.* 1936).

One who requires the official act of a notary public ordinarily looks to the notary alone, and although we speak of a notary's "negligence" for the reason that his obligation is phrased in terms of due care, his obligation really rises consensually from his undertaking to furnish the service requested. In many jurisdictions (New Jersey is not one of them), a notary must post a surety bond, and the injured

person sues upon that agreement for the notary's neglect. 66 *C. J. S. Notaries* § 3(b), *p.* 611; § 12, *p.* 628. We do not suggest it is pivotal whether the notary's liability is labeled tortious or contractual. Rather the point is that one who seeks the services of a notary public does not ordinarily rely upon the credit of some third-party employer of the notary; he asks only for *a* notary, and *any* notary will do. So, here, plaintiff conceded before us that it was wholly unaware of the identity of the notary and did not know the notary was connected with a bank. In short, plaintiff never sought the responsibility of someone other than *a* notary, and if the bank is held, plaintiff will have a windfall.[2]

It is true, of course, that a principal may be held liable even though the injured party was unaware of him. Thus in the ordinary automobile case the claimant may pursue the party the negligent driver was serving even though the claimant had no idea he existed, and in the conventional contract situation, an undisclosed principal may be held upon an agreement made for him. But the case before us departs from both situations. As to tort liability, the employer engages another to do the work he would otherwise do himself, and for that reason it is just that his economic entity absorb the full cost of the activity he is able to expand through the employment of others. *Cf. Devone v. Newark Tidewater Terminal, Inc.,* 14 *N. J. Super.* 401, 412–413 (*App. Div.* 1951). The bank, however, could not itself have played the part of a notary public. Nor, to pursue the contract approach, can the bank be likened to the conventional undisclosed principal, for the undisclosed principal is the real party in interest in the transaction, and in suing him the other party to the contract in substance enforces the agent's right of recourse against the principal. See,

---

[2] The situation contrasts sharply with that in which the transfer agent of corporate stock insists upon a guarantee of signature by a bank. There the responsibility of the bank is expressly sought and expressly given. See, 1 *Christy, The Transfer of Stock* (3d ed. 1964), § 44, *pp.* 6:7–6:13.

*Mechem, Outlines of Law of Agency* (*4th ed.* 1952), *pp. 96–98; Seavey, Studies in Agency* (1949), *p.* 89. Here, plaintiff seeks to hold the bank, not on the thesis that the bank was a party in interest in a contract with plaintiff, but solely because the bank sought to improve its relations with its own customers by providing for the convenient presence of a notary public.

Thus the issue before us cannot be resolved by easy recourse to those doctrines. Rather a policy decision must be made upon the equities of this unique transaction. The issue concerns not only banks and other institutions, but it concerns also the members of the Bar. In our State at least, it is quite common for attorneys to arrange for their employees to become notaries, and no doubt the notaries thereupon accommodate clients of the office and others as well, who, knowing of their presence, seek their official services.

We are not persuaded that justice would be served by imposing liability in these circumstances. Surely neither party anticipated that prospect, and hence to deny liability cannot surprise or disappoint anyone. No doubt a private employer, here a bank, may gather goodwill through the presence of a notary public and may have that advantage in mind when it encourages its employee to seek the office, but it is also true the public convenience is furthered when the services of a notary public are thus made available. We see no good reason to hold a private employer who was in no sense a party in interest in the transaction when the claimant did not look to the employer and sought nothing more than an acknowledgment before *some* notary public.

We add that the private employer of a notary public might be liable for the notary's breach of duty if the employer participated in that breach, as for example if the employer should ask or encourage the notary to act without appropriate inquiry. It may also be that the private employer could be held if it led another to believe the notary was acting for it and on its credit or responsibility. Neither of those conceivable bases of liability is suggested in the

case at hand, but the situation being novel, we reserve to plaintiff the right to file within 30 days of the date of our mandate an amended complaint upon the first of those theses if plaintiff believes it can succeed upon it.

One matter remains. In seeking to avoid liability on the basis of *respondeat superior,* the bank urged the notary public was not liable and hence it could not be held vicariously. The basis of the contention that the notary could not be held was that no statute contemplates an acknowledgment with respect to an indemnity agreement and hence it was not within the official power of the notary public to take the acknowledgment. We think it clear that a notary who takes an acknowledgment cannot avoid liability on that ground. Of course if the plaintiff sought the acknowledgment only under misapprehension that the law required it and hence did not in fact rely upon the acknowledgment for any other purpose, plaintiff's claim would fall, but if a party to an instrument, whether recordable or not, seeks and relies upon a notary's certificate to evidence the authenticity of the obligor's signature, the notary cannot escape liability upon the thesis that he went beyond his official role. Indeed, that circumstance could militate against the bank in that, if the notary is not exercising his public authority, it would be easier to say he was furthering his private employment. Nonetheless, we think the bank should not be held upon that hypothesis for it would still be true that plaintiff here sought only the acknowledgment of *a* notary, and the bank intended no more than to accommodate people who sought the services of a notary public as such.

The judgment of the Appellate Division is reversed and the judgment of the trial court is affirmed, subject to leave to plaintiff to file an amended complaint as provided hereinabove.

FRANCIS, J. (dissenting). I would affirm the judgment of the Appellate Division substantially for the reasons set forth in its *per curiam* opinion. 91 *N. J. Super.* 13 *(App.*

*Div.* 1966). We should not lose sight of the fact that summary judgment was entered in favor of the bank on the pleadings and a deposition of its assistant cashier-notary public. Appellate courts have always been reluctant to grant such motions unless it appears beyond doubt that no possible factual issue appears or may be made to appear if a fair and adequate record is allowed to be presented.

The Appellate Division held that a factual question existed for jury determination as to whether the notary public-assistant cashier was acting in both capacities, public and as agent of the bank, when he executed the false acknowledgment. I agree with that determination but in addition I believe the summary judgment was granted on an inadequate record. In pretrial discovery proceedings, plaintiff took the assistant cashier's deposition. When completed, defendant moved for summary judgment on the basis of his testimony. But the deposition shows that whenever plaintiff's attorney undertook to question him about the knowledge of and participation in his activities as a notary public by other officials of the bank in the course of bank business, the bank's attorney objected and directed the witness not to answer. The witness then said "I decline to answer." The direction was improper, and in fairness to plaintiff, we should not deprive it of a plenary trial on the basis of such a deposition. Since so much of the evidence to support plaintiff's cause of action is necessarily in the hands of the bank, and since enough appears in the deposition to at least raise some question of an agency relationship between the bank and the notary, plaintiff ought to be allowed to go to trial. In this kind of a situation, plaintiff should be permitted to rely for its case on what it can draw out of the defendant. See *Mayflower Industries v. Thor Corp.,* 15 *N. J. Super.* 139, 156 (*Ch. Div.* 1951), aff'd o. b. 9 *N. J.* 605 (1952).

Regardless of the limited record, in my judgment there is ample evidence to require denial of a summary judgment for the defendant. The assistant cashier Kuiphoff is a full-

time employee of the bank and has been since 1941. For eight years before the incident in question he had been a notary and had pursued his activities in that connection in the bank, during banking hours, and for the accommodation of bank depositors and customers. It is clear that he did so primarily to serve the bank's interest, not his own. Moreover it is inferable that he did this over the years with the knowledge of and at the authorization of the bank as a service for its depositors and customers.

Under the law a certificate of acknowledgment is an act which must in the nature of things be relied on with confidence by men of business. The duty of a notary public in certifying an acknowledgment is not limited to the one to whom he directly renders service. "His duty is to the public and to those who may be affected by his act. The public has the right to rely upon the verity of a certificate, and if one sustains injury as the proximate [result] of a willful violation of [the notary's] official duty with respect to that certificate" he should be held liable to that person. When a notary by willful misconduct "starts on its way in the commercial world a false certificate upon which the public has the right to rely, he ought to be held responsible for all proximate consequences, not only to the person who takes immediately and directly under the instrument bearing the certificate, but to everyone damaged as the proximate result of it." See *American Surety Co. of New York v. Boden,* 243 *Ky.* 805, 50 *S. W. 2d* 10 (*Ct. App.* 1932); *Butler v. Olshan,* 280 *Ala.* 181, 191 *So. 2d* 7 (*Sup. Ct.* 1966). The bank is charged with knowledge of this state of the law.

When to serve its own interest the bank authorized its employee-notary to issue certificates of acknowledgment at the request of and as a service to its depositors, it empowered him to issue an instrumentality which it knew or should know the receiving customer intended to deliver to a third person. The bank knew the notary's certificate affixed to the document a representation of verity which would

accompany it into the channels of business, on which a member of the public could rely in entering into the transaction the instrument was designed to accomplish. When the plaintiff here received the indemnity agreement in question, there was no obligation to check the signatures. The presence of a notary's certificate justified belief that the document was *bona fide*. The false representation of verity or genuineness was made possible by the bank and a jury could find justifiably that it was made at least partly in the bank's interest, because the notary was acting within the scope of his employment in serving a customer of the bank.

For these reasons I would affirm the Appellate Division and remand the case for plenary trial and full development of the relevant facts.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, HALL, SCHETTINO and HANEMAN—5.

*For affirmance*—Justice FRANCIS—1.