COMMERCIAL UNION INSURANCE COMPANY OF NEW YORK, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT, v. BURT THOMAS-AITKEN CONSTRUCTION COMPANY, *ET AL.*, DEFENDANTS, AND WILLIAM AITKEN AND PROSPECT PARK NATIONAL BANK, DEFENDANTS-RESPONDENTS, AND RICHARD KUIPHOFF, JR., DEFENDANT-RESPONDENT AND CROSS-APPELLANT.

Argued March 5 and 17, 1969—Decided May 19, 1969.

*Mr. Theodore W. Geiser* argued the cause for appellant and cross-respondent (*Messrs, Pindar, McElroy, Connell and Foley,* attorneys).

*Mr. Meyer Sugarman* argued the cause for respondent Aitken.

*Mr. Reginald F. Hopkinson* argued the cause for respondent Prospect Park National Bank (*Messrs. Jeffer, Walter and Tierney,* attorneys).

*Mr. Howard Stern* argued the cause for respondent and cross-appellant (*Messrs. Shavick, Thevose, Stern, Schotz and Steiger,* attorneys).

The opinion of the court was delivered

PER CURIAM. Plaintiff, a surety company, sued upon an indemnity agreement to recoup a loss on a performance bond. One of the indemnitors asserted his signature was forged, whereupon plaintiff joined the notary public who took the acknowledgment on the agreement, and also the bank which employed the notary. The bank prevailed on a motion for summary judgment. The Appellate Division reversed, 91 *N. J. Super.* 13 (*App. Div.* 1966), and we reversed the judgment of the Appellate Division and affirmed the trial court's judgment, with, however, leave to plaintiff to file an amended complaint. 49 *N. J.* 389 (1967). We there held that the

private employer of one who is also a notary public is not liable vicariously for the notary's neglect in his public office. We said (*pp.* 395–396) :

"We add that the private employer of a notary public might be liable for the notary's breach of duty if the employer participated in that breach, as for example if the employer should ask or encourage the notary to act without appropriate inquiry. It may also be that the private employer could be held if it led another to believe the notary was acting for it and on its credit or responsibility. Neither of those conceivable bases of liability is suggested in the case at hand, but the situation being novel, we reserve to plaintiff the right to file within 30 days of the date of our mandate an amended complaint upon the first of those theses if plaintiff believes it can succeed upon it."

We limited an amended complaint to the one thesis since, as to the other, plaintiff conceded it did not know who the notary was when it accepted the indemnity agreement and of course had no idea that he worked for the bank.

Plaintiff filed an amended complaint in harmony with the leave so reserved to it. Upon trial the jury found that the indemnitor's signature was forged but that the defendant notary did not know his acknowledgment was untrue and was not negligent. Upon those findings, the trial court gave judgment for the notary and for the bank. Plaintiff appealed and we certified the appeal before argument in the Appellate Division.

Plaintiff seeks reversal as to the notary upon two grounds.

The first is that the trial court should have stricken the notary's testimony because he had declined to answer this question at pretrial discovery:

"Q. Have there ever been occasions in which you have used your notarial powers with respect to documents, specific acknowledgments, without having the person whose signature is being acknowledged personally before you?"

Counsel who then represented both the bank and the notary directed his client not to answer. Plaintiff sought to compel

an answer before trial but, we are told, the court sustained an objection based upon the privilege against self-incrimination. At the trial, the notary, testifying in his own defense, answered in the negative a similar question put by his own attorney. Plaintiff did not object. Indeed, on cross-examination plaintiff put the same question, but after receiving the same negative answer, sought to bring out that the witness had refused to answer that question on the deposition. The trial court sustained defendant's objection. Later in the trial, plaintiff moved to strike this testimony, asserting that where a party refuses to answer on pretrial discovery, he should be barred from offering testimony on the subject at the trial. The motion to strike was denied.

*Duratron Corp. v. Republic Stuyvesant Corp.,* 95 *N. J. Super.* 527 (*App. Div.* 1967), to which plaintiff refers, dealt with the question whether an inference may be drawn in a civil suit against a defendant who does not testify. That is not the situation here; defendant did testify. Nor do we have the question whether sanctions may be imposed against a party to a civil suit who refuses to answer, before or at trial, on the plea of self-incrimination. Defendant was never confronted with a choice of consequences. Here the testimony was given and received without objection.

The sole issue is whether the refusal to answer before trial may be shown to question the credibility of the answer given at trial when the answer, here a denial that the witness ever took an acknowledgment in the absence of the party who signed the instrument, could not conceivably involve the prospect of criminal liability. We incline to think the question put on cross-examination was proper to that end, but a reversal on that account is not warranted since we do not believe prejudice resulted. Under the circumstances, the answer would have contributed little if anything to the evaluation of the witness's credibility. We add that proof of the pretrial refusal would not have supplied affirmative evidence that the notary had taken the acknowledgment in question in the absence of the purported signatory.

██ The remaining contention is that a notary should be held to guarantee the truth of his acknowledgment. Plaintiff agrees our own decisions hold a notary is not an insurer, and is not liable except for negligence. *Motor Credit Co. v. Tremper,* 121 *N. J. L.* 91, 94 *(Sup. Ct.* 1938); *Immerman v. Ostertag,* 83 *N. J. Super.* 364, 370 *(Law Div.* 1964). This is the general rule. 1 *Am. Jur. 2d,`Acknowledgments,* § 117, *p.* 526. We see no reason to impose an insurer's liability, and very good reason not to do so. An acknowledgment is far from the commercial affairs as to which liability has been imposed without inquiry as to fault. The authorized fee for an acknowledgment ($1.00) is nominal, *N. J. S. A.* 22A :4–14, and would hardly support an investigation appropriate for the assumption of absolute liability. Officers[1] empowered to take acknowledgments would not likely run the risk. Due care is an adequate and a just measure of accountability.

The notary having been acquitted of fault, plaintiff's claim against the bank had to fall. The notary's protective cross-appeal is academic.

The judgments are affirmed.

FRANCIS, J. (dissenting). I would reverse this judgment and replace it with judgment in favor of the plaintiff against Richard Kuiphoff, Jr. and his employer, Prospect Park National Bank. The basic reasons for this view are set forth in my dissent in the original case in 49 *N. J.,* at 396–399. In my judgment both negligence and misrepresentation

---

[1] *N. J. S. A.* 46:14–6 provides:
"The officers of this State authorized to take acknowledgments or proofs in this State under authority of this section are a justice of the Supreme Court; a judge of the Superior Court; a judge of the County Court of any county; a master of the Superior Court by such designation, or by the designation of master-in-chancery or master of the court of chancery of New Jersey; an attorney-at-law; a counsellor-at-law; a notary public; a commissioner of deeds appointed for any county; a county clerk of any county; a deputy county clerk; a surrogate or deputy surrogate of any county; and a register of deeds and mortgages or deputy register of any county."

were so fully supported and strengthened at the trial that the verdict denying recovery to the plaintiff cannot be sustained in fact or in law.

For many years the defendant-bank had been in the business of rendering notarial services for its customers through its officer and official notary, Kuiphoff. During those years it had paid Kuiphoff's notary fees and listed them as a business expense for tax purposes. So whenever Kuiphoff took an acknowledgment or an affidavit for a bank customer or at the instance of such a customer, he was acting in the regular course of his employment for the bank. Furnishing notarial services by the bank for its customers was so much in its interest that Kuiphoff did not charge them any fees for rendering the service. When he took the alleged acknowledgment of William Aitken in this case, it was a classic example of his customary and authorized activity in the interest of and for the benefit of the bank.

It cannot be doubted that plaintiff-insurance company would not have issued its bond guaranteeing performance of the work of the principal named therein, Burt Thomas-Aitken Construction Company, and incurred the substantial financial exposure represented thereby if the construction company and the individual indemnitors had not executed the indemnity agreement involved in this proceeding. The very first paragraph of the agreement expressly says so, and Kuiphoff had to be aware of the fact. Obviously the bond was issued in reliance upon (1) the signatures of the individual indemnitors, including William Aitken, and (2) the solemn assertion of the duly authorized bank officer-notary authenticating their signatures.

The indemnity agreement purports to have been signed by all the parties, including William Aitken, on December 1, 1961. The acknowledgments of signature and execution purport to have been taken by Kuiphoff on December 7. It has been established conclusively that William Aitken did not sign the agreement, that his signature is a forgery and that he neither appeared before the notary Kuiphoff nor acknowl-

edged to him that he had signed the instrument. But Kuiphoff's verification and notarization represent to the world and particularly to the Commercial Union Insurance Company of New York, that on December 7, 1961 "before me personally appeared William Aitken, *to me known and known to me to be the individual described in and who executed the foregoing instrument and he acknowledged to me that [he] executed the same.*" (Emphasis mine.) This representation was followed by Kuiphoff's signature as a notary public. Obviously Aitken did not appear before him, was not known to him, and did not acknowledge that he had signed the instrument. The statement was false because Kuiphoff does not know Aitken. He has no recollection and no notes of what did occur. It seems unlikely that if he took five acknowledgments in one transaction involving an indemnity agreement (as appears to be the case here) he would have an utter blank memory about it — especially since he testified that such a group acknowledgment would be a rarity.

Kuiphoff's total testimony is negative in form. He did not state that he actually took a proper acknowledgment. He relied only on his alleged customary practice (said to be) that he never took an acknowledgment unless he knew the signer personally or received satisfactory identification of the signer. The identification requirement he followed was minimal. If the person asking for the taking of his acknowledgment had an account at the bank, his signature card might be used or Kuiphoff might ask for his driver's license — "something of that nature." (Aitken's firm had a substantial and active account at the bank, and as treasurer, his signature was on file there.) In my judgment merely checking a signature card is practically worthless as a means of identification. When asked if he could identify a signature if he saw one sample of it, Kuiphoff said "I could not distinguish from all the signatures we have at the bank." But the sole representation in his acknowledgment is that he knew Aitken and that Aitken personally appeared before him. That was not true because he did not know Aitken, and obviously Aitken

did not appear personally. *He did not note on the acknowledgment or in any memorandum or record he kept of his transactions that someone in whom he had confidence introduced William Aitken to him that day, or that in some other way he obtained satisfactory identification verification.* In my view in face of the undoubted forgery, Kuiphoff's testimony was so lacking in probative substance as to be incapable of supporting a verdict in his favor or for the bank.

Kuiphoff's false statement on the indemnity agreement constituted a representation of verity in the business world. It was a representation which he and the bank knew would be given credence in the channels of trade, and on which they knew (Kuiphoff testified that he took the acknowledgment so that the validity of the signature could be relied upon) the insurance company would rely as a basis for entering into the transaction. In fact, the plaintiff's bond supervisor who supervised the construction company's account testified that he examined the indemnity agreement for proper execution and acknowledgment, relied upon its propriety and advised the underwriters it could be accepted as a basis for issuing the bond. Under the circumstances Kuiphoff's false statement in the acknowledgment that Aitken was known to him and personally appeared before him and acknowledged that he had signed the indemnity agreement, instead of noting thereon the true circumstances under which the acknowledgment was taken, constituted a violation of his statutory duty to the public as a notary and should render him liable for the injurious consequences that flowed therefrom. In my view the form of acknowledgment delivered to the bonding company was the equivalent of a guaranteed signature. Its effect was to relieve the plaintiff of all obligation to check Aitken's signature. And the damage suffered by the plaintiff as a result of the misrepresentation was brought about because the bank acting as an undisclosed principal and serving its own business interest had authorized its employee Kuiphoff to render notarial services to its customers.

The only just result here is an award in favor of the plaintiff against these two defendants.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, PROCTOR, HALL, SCHETTINO and HANEMAN. — 6.

*For reversal* — Justice FRANCIS — 1.