462 P.2d 814

**TRANSAMERICA INSURANCE COMPANY, a California corporation, and Transamerica Title Insurance Company, an Arizona corporation (formerly Phoenix Title and Trust Company), Appellants,**

v.

**The VALLEY NATIONAL BANK of Arizona, a national banking association, Appellee.**

**No. 1 CA–CIV 880.**

Court of Appeals of Arizona,
Division 1.

Department B.

Dec. 23, 1969.

Rehearing Denied Jan. 23, 1970.

Review Denied June 23, 1970.

Jennings, Strouss, Salmon & Trask, by O. M. Trask and Thomas C. Kleinschmidt, Phoenix, for appellants.

Rawlins, Ellis, Burrus & Kiewit, by Dennis M. Balint and Chester J. Peterson, Phoenix, for appellee.

JACOBSON, Judge.

The vicarious liability of an employer of a notary public for the alleged negligent acts of its employee-notary public is presented in this appeal from a granting of a Motion for Summary Judgment in favor of the employer.

The plaintiffs-appellants, Transamerica Title Insurance Company and Transameri-

ca Insurance Company, brought suit against Lucille Sullivan, a notary public, her surety and her employer, defendant-appellee, Valley National Bank of Arizona. The cause of action arose out of the forgery of certain documents held in escrow by plaintiff Transamerica Title Insurance Company and the disbursement of funds from the escrow by that plaintiff in reliance upon the forged documents.

The facts, taken in the light most favorable to the plaintiffs against whom the Motion for Summary Judgment was granted, Elerick v. Rocklin, 102 Ariz. 78, 425 P. 2d 103 (1967), are as follows:

Lucille Sullivan had been an employee of the defendant for approximately twelve years on the date when the acts complained of occurred. During most of that time she was a commissioned notary public and had obtained the commission at the direction and insistence of the defendant who paid all fees required by the State for the commission, purchased her seal, paid premiums on her surety bond, and paid all renewal fees and premiums. Mrs. Sullivan's employment at the time of the acts complained of was as secretary to the manager of the Mesa branch of defendant. While Mrs. Sullivan's services as a notary were primarily utilized by the defendant in connection with banking business, she was also allowed to furnish her services as a notary to bank customers on non-bank business. No fees were required by Mrs. Sullivan for her services when acting as a notary public, but when such a fee was tendered and could not be rejected gracefully the monies received were turned over to defendant.

In connection with bank business—notarizations of signatures on papers dealing with bank transactions—Mrs. Sullivan had been requested by her superiors on numerous occasions to notarize signatures without the necessity of seeing the person actually sign the document in question. Taking the evidence in the light most favorable to the plaintiff, the bank condoned the notarization of signatures without the ac-

tual physical presence of the person whose signature was to be notarized, even in connection with non-bank business, if the signator was a customer of the bank and if a signature card of that individual was on file in the bank. (This fact is hotly contested by the defendant.)

On April 14, 1965, one Duan Singh, a customer of the Mesa branch of defendant, came into the defendant's Mesa branch office and requested Mrs. Sullivan to notarize the signature of Alfred H. Nichols, also a customer of the Mesa branch, to a document purportedly containing Mr. Nichols' signature. Mrs. Sullivan, who was personally acquainted with Mr. Nichols, inquired as to why Mr. Nichols was not present to sign the document and was told by Mr. Singh that Mr. Nichols was busy or unavailable. After checking the signature on the document with the signature card of Mr. Nichols on file at the bank, Mrs. Sullivan attested to the correctness of the Nichols' signature by the usual acknowledgment form.

Mr. Singh subsequently presented this document, which in fact was a warranty deed wherein Mr. Nichols appeared as grantor, to the plaintiff in connection with its duties as an escrow holder of a land sales transaction in which Alfred H. Nichols was the purported seller. This warranty deed was used to close the escrow in which there also appeared supplemental escrow instructions directing the payment by plaintiff to Mr. Singh of the sum of $84,-800. Upon closing of the transaction, the plaintiff paid to Mr. Singh the above sum. Mr. Nichols' signature on the warranty deed and other documents in escrow proved to be forgeries. See State v. Singh, 4 Ariz.App. 273, 419 P.2d 403 (1966). This suit by plaintiff followed with the resultant granting of defendant-employer's Motion for Summary Judgment.

The defendant defends the action of the trial court, in defendant's words, primarily "on the principle of law that a private person or a corporation is not responsible for the breach of duty of a special public offi-

cer appointed by public authority, but employed and paid by the private person or corporation unless the action undertaken is in furtherance of the employer's business, or the employer participated in the breach."

In order to affirm the trial court based upon the principle of law quoted above, this court must make two determinations:

(1) That a notary public is a "public officer" as that term is used in limiting vicarious liability and,

(2) that the act of the notary public was not in furtherance of the defendant's business and that the defendant did not participate in the breach.

### Notary Public as a Public Official

Turning to the first proposition, it is almost uniformly held, from the earliest common law, that a notary public holds a public office. 39 Am.Jur., Notary Public Sec. 6 (1942); 66 C.J.S. Notaries § 1 (1950); 79 A.L.R. 449 (1932). A quote from the U. S. Supreme Court in the case of Britton v. Niccolls, 104 U.S. 757, 26 L. Ed. 917 (1882), is illustrative:

"It is enough here that the notary was not, in this matter, the agent of the bankers. He was a public officer, whose duties were prescribed by law. * * *" 104 U.S., at 766.

While decisions from other jurisdictions are persuasive on this question, the determination of whether a notary public is a public officer must be based upon the law of the State of Arizona. Initially, intellectual difficulty is experienced in attempting to place a notary public within the judicial definition of a "public officer." As was stated in Winsor v. Hunt, 29 Ariz. 504, 243 P. 407 (1926):

"* *, * the chief elements of a 'public office' are well summed up. The specific position must be created by law; there must be certain definite duties imposed by law on the incumbent, and they *must involve the exercise of some portion of the sovereign power*." (Emphasis in original.) 29 Ariz., at 520, 243 P. at 413.

There is no doubt a notary public is authorized by law and has definite duties imposed by law, A.R.S. Sec. 41–311 and –312 (1956), but as to what exercise of the sovereign power of the State of Arizona a notary public is engaged in, we are at somewhat a loss to define. The sovereign power of the State of Arizona is divided into three separate departments—the legislative, the executive and the judicial. Ariz.Const. art. III. A reading of A.R.S. Sec. 41–312 (1956) discloses to us no legislative or executive duty imposed by law upon notaries public. If, therefore, there is an exercise of the sovereign power of the State of Arizona by a notary public, it must be judicial, and there are cases which so hold:

" 'The officer who takes an acknowledgment * * * acts in a judicial character in determining whether the person representing himself to be, or represented by someone else to be, the grantor named in the conveyance, actually is the grantor. He determines further whether the person thus adjudged to be the grantor does actually and truly acknowledge before him that he executed the instrument.' " Wasson v. Connor, 54 Miss. 351, 352, quoted in Bickett v. Knight, 169 N.C. 333, 85 S.E. 418, 422 L.R.A.1915F, 898 (1915).

However, a careful analysis of the duties of a notary public indicates that he does not adjudicate: he witnesses and attests; he is a certifier of facts; a recorder of signatures; a keeper of a seal to facilitate and authenticate commercial transactions; and a giver of oaths. We tend to agree with the Honorable Brogden, J., in his dissenting opinion in Harris v. Watson, 201 N.C. 661, 161 S.E. 215, 79 A.L.R. 441 (1931) when he caustically observed that if notaries public are judicial officers, then "[t]he records in the office of the Governor disclose that there are now five thousand five hundred and sixteen qualified notaries in North Carolina, and, if all of

these be judicial officers of the state, it is obvious that the judiciary is blessed with an *overwhelming variety of personnel*." 161 S.E., at 220.

Whatever may be our logical conclusions on this subject, the Constitution of the State of Arizona and the legislative enactments thereunder are controlling.

The Arizona Constitution article IV, part 2, Sec. 4, provides in part as follows:

"No person holding *any public office* of profit or trust under the authority * * * of this State, shall be a member of the Legislature; Provided, that appointments in * * * *the offices of notary public* * * * shall not work disqualification for membership * * *." (Emphasis added.)

Article XXII, Section 17 of the Arizona Constitution provides:

"All State and county officers (*except notaries public*) shall be paid fixed and definite salaries, * * *." (Emphasis added.)

Moreover, in Title 38 of the code entitled "Public Officers and Employees" are placed the bonding provisions for notaries public and the section dealing with resignation of notaries from office. A.R.S. Sec. 38–252, –294(2) (1956).

It therefore appears that by reason of the constitutional provisions above referred to, Arizona is locked into the historical definition of the office of notary public as a public office. While the Arizona Constitutional and statutory provisions make it clear that a notary public is designated a public officer, it is also abundantly clear that he is not a public officer in the ordinary sense that that term is customarily used. For example, a notary public may hold other public offices, cf. Ariz.Const. art. IV, pt. 2, Sec. 4; a notary public does not receive compensation from the State and he is allowed to charge the public a fee for his own use, Ariz.Const. art. XXII, Sec. 17; A.R.S. Sec. 41–314 (Supp.1969–

1970); and his office is neither elective nor appointive by the Governor, A.R.S. Sec. 41–311 (1956). In view of these facts we hold that while the Arizona Constitution may designate a notary public as a public officer, such a position is, at best, one of a quasi-public nature.

### Employer's Liability

Having indulged ourselves in this exercise in judicial frustration, does this mean that as such a quasi-public officer, his employer is insulated from liability solely because of this status?

While there are numerous decisions designating notaries public as public officials, there are very few decisions dealing with whether this quasi-official capacity shields a notary's employer from liability. Those cases which do deal with this question generally involve a failure to present or properly protest bank paper by an employee-notary. The better rule seems to be that the employer-bank is liable for the notary's neglect, but distinguishes the official capacity to act as a notary in protesting paper with that of an employee of the bank selected by the bank to perform the bank's own obligation out of which the neglect occurs. See 9 C.J.S. Banks and Banking § 235c (1938); Titus & Scudder v. Mechanics' National Bank, 35 N.J.L. 588 (1871); Simon v. People's Bank & Trust Co., 115 N.J.L. 521, 180 A. 682 (1935), reversed on other grounds, 116 N.J.L. 390, 184 A. 793 (1936).

A decision which is relied upon heavily by the defendant in this regard is Commercial Union Ins. Co. v. Burt Thomas-Aitken Constr. Co., 49 N.J. 389, 230 A.2d 498 (1967). In that case, the plaintiff, a surety, sued on an indemnity agreement to recoup a loss on a performance bond. One of the indemnitors defended on the ground that his signature to the indemnity agreement was forged. The plaintiff then joined the notary public who had notarized the forged signature and her employer, a

bank. The bank defended on the ground that when its employee acted as a notary public he was not an employee of the bank, but a public official. The bank prevailed on a Motion for Summary Judgment. The New Jersey Supreme Court upheld the granting of the Motion for Summary Judgment in favor of the bank.

We need not make an exhaustive analysis of this case as the results reached therein are not inconsistent or contrary to our view of the law as applies to employers of notaries public. As the New Jersey Supreme Court stated:

> "We add that the private employer of a notary public might be liable for the notary's breach of duty if the employer participated in that breach, as for example if the employer should ask or encourage the notary to act without appropriate inquiry." 230 A.2d, at 501.

While the results reached in *Commercial Union* could be reconciled with the general law on the subject of employers of public officials—See, e. g., Hayes v. Sears, Roebuck & Co., 34 Wash.2d 666, 209 P.2d 468 (1949)—we are of the opinion that the quasi-official designation given to notaries public does not, in and of itself, shield their employers from liability for their negligent acts. In our opinion this issue must be decided under the rules pertaining to agency in general. The test applicable here is: Whether the employee was acting within the scope of her employment at the time the alleged negligent act took place.

The conduct of a servant or agent is within the scope of his employment if "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the master." Restatement, Second, Agency Sec. 228 (1958).

Keeping in mind that the judgment granted in this case was on a Motion for Summary Judgment and that such a judgment could not be granted where there exists a material disputed fact, Ong Hing v. Arizona Harness Raceway, Inc., 10 Ariz. App. 380, 459 P.2d 107 (1969), an analysis of the above-quoted elements is necessary. As to the first element—i. e., whether or not the act was of the kind Mrs. Sullivan was employed to perform—it appears that the defendant supplied all the necessary paraphernalia for Mrs. Sullivan to act as a notary public; that she held this office at the request of her employer; and that she had in the past, with the knowledge of her employer, notarized non-bank transactions. In our opinion there are sufficient facts here over which reasonable men might differ as to whether the notarization of a document in a non-bank transaction was within the type of duties expected of Mrs. Sullivan.

As to the second element, while it appears that the particular notarization involved here occurred between twelve and one o'clock there is no dispute that Mrs. Sullivan was in the bank at her usual post of duty when the request for notarization service was made and therefore substantially within the authorized time and space limits of her duties.

As to the third element of service to the defendant, we cannot say, as a matter of law, taking into consideration that the present day banking business is of a competitive nature and the availability of a notary public for bank customers could be an effort on the bank's part to improve customer relations, that the act of Mrs. Sullivan in notarizing the document in question would not be in furtherance of a purpose to serve the bank. This is especially true when the bank encouraged Mrs. Sullivan to so act.

In view of our conclusions reached here, it is our opinion that there exists disputed issues of material fact which would preclude the granting of a Motion for Summary Judgment.

While we decide this case primarily on the principles of agency and scope of employment, we feel that the facts here place it within the exception delineated by the *Commercial Union* case. As previously pointed out, in that decision an employer of a notary public might be liable "if the employer should ask or encourage the notary public to act without appropriate inquiry."

Unfortunately, at the time the trial court ruled on this matter the closing chapter of the *Commercial Union* case had not been written. In compliance with the directions of the New Jersey Supreme Court, Plaintiff amended its pleadings to allege the participation of the defendant bank in the acts of its employee-notary public. The subsequent Supreme Court decision in that case, reported in 54 N.J. 76, 253 A.2d 469 (1969), is not particularly helpful on the point here in question, as the jury found that the employee-notary public was not negligent and therefore there could be no liability on the part of the employer-bank. However, the remand and subsequent jury trial is illuminating in that the question of the bank's liability for the acts of its employee-notary public was submitted to the jury.

In the case before us here, it is undisputed that Mrs. Sullivan was requested by her employer to notarize documents dealing with bank business without the necessity of actually witnessing the signatures involved. While it is disputed as to whether the bank asked or encouraged Mrs. Sullivan to act "without appropriate inquiry" in connection with non-bank business, there is sufficient evidence in this regard to raise a material fact issue, even within the rationale of *Commercial Union*.

Judgment reversed.

EUBANK, P. J., and HAIRE, J., concur.